**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| YAHYA ASAAD MUHAMMAD | : | |
| | : | |
| Appellant | : | No. 2438 EDA 2019 |

Appeal from the Judgment of Sentence Entered July 23, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0007151-2018

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **Filed: February 7, 2020**

Yahya Asaad Muhammad (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of driving under the influence of alcohol (DUI).[1]  We affirm.

The trial court accurately summarized the factual background as follows:

On September 9, 2018, Officer Evan Flora was working as a patrol officer in Bridgeport Borough, Montgomery County.  Notes of Testimony, "N.T." Apr. 15, 2019 at 4.  During his shift that night, he received a dispatch from adjacent Upper Merion Township that there was a hit and run in the area of 202 and DeKalb Street and that officers observed a dark colored sedan with heavy damage driving away from that area on two rims.  ***Id.*** at 5-6.  Officer Flora observed a maroon Ford 500 driving on two rims that were sparking underneath the car; Flora could hear the metal screeching on the ground.  ***Id.*** at 6.  The car was traveling

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(a)(1).

well under the posted speed limit of 25 mph. *Id.* Officer Flora believed this to be the car from the dispatch. *Id.* at 6-7. He executed a U-turn and got behind the vehicle. *Id.* at 7. [Appellant] made a U-turn, at which point Officer Flora activated his emergency lights and executed a traffic stop. *Id.* [Appellant] pulled over and immediately exited his vehicle, before Officer Flora approached him. *Id.* [Appellant] began to inspect the damage to his vehicle. *Id.* at 8. Officer Flora approached [Appellant] and asked him for his license, registration and proof of insurance. *Id.* at 9. [Appellant] retrieved a stack of papers from the vehicle and began sorting through it and dropping papers. *Id.* When he attempted to retrieve the dropped documents, Officer Flora observed him lose his balance and steady himself on the door of the car. *Id.* at 10.

Officer Flora questioned [Appellant] about the damage to his car and [Appellant] indicated that he ran over a median in Upper Merion.[FN1] *Id.* During their conversation, Officer Flora observed that [Appellant's] pupils were dilated, his eyes were glassy and bloodshot and there was an odor of alcohol on his breath. *Id.* at 11. Officer Flora asked [Appellant] if he had been drinking, [and Appellant] initially responded, "No." *Id.* The second time, he said "not within the hour." *Id.* Finally, [Appellant] stated, "It's my birthday man, come on." *Id.* at 12. At this point Officer Flora attempted to administer field sobriety tests. *Id.* at 13. Throughout the testing, [Appellant] attempted to talk his way out of it. *Id.* at 15-16. Officer Flora administered a portable breath test. *Id.* His first attempt at the breath test was unsuccessful and on his second attempt he sucked air in instead of blowing air out. *Id.* at 15. Officer Flora attempted to administer additional tests, but [Appellant] complained about each location until, eventually, he refused to move to a location to conduct further field sobriety testing. *Id.* at 17. While Officer Flora was attempting to explain a third test, [Appellant] put his hands behind his back and stated, "arrest me." *Id.* [Appellant] also refused to submit to chemical testing. *Id.* at 55.

FN1 Police ultimately determined that [Appellant] was not involved in the hit and run. *Id.* at 19.

Trial Court Opinion, 9/16/19, at 1-3.

Appellant appeared for a bench trial on April 15, 2019, after which the trial court found him guilty of DUI, general impairment. On July 23, 2019, the trial court sentenced Appellant to three to six months of incarceration. Appellant filed this timely appeal. Both the trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant presents one issue for our review:

> Was the evidence insufficient as a matter of law for the court to convict [Appellant] of 75 Pa.C.S.A. § 3802(a)(1) DUI/Unsafe Driving when there was insufficient evidence [Appellant] operated a vehicle "after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of a vehicle."

Appellant's Brief at 2.

Our standard of review of Appellant's sufficiency claim is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while

- 3 -

> passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

To reiterate, the jury, as the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder.

*Commonwealth v. Baumgartner*, 206 A.3d 11, 14–15 (Pa. Super. 2019) (citations omitted).

Instantly, Appellant was convicted of DUI, general impairment, pursuant to 75 Pa.C.S.A. § 3802(a)(1), which states that an individual "may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle."

Appellant argues that the evidence was insufficient to support a finding that he was incapable of safe driving because he "was able to walk unaided, talk coherently and he followed all of the officer's directions." Appellant's Brief at 5. Appellant further asserts that Officer Flora did not "witness any driving behavior . . . which would suggest that he was incapable of safe driving." *Id.* at 7. He continues:

> It turned out that [Appellant] was not involved in the hit and run in Upper Merion, so that could not provide evidence of incapacity to drive. When Officer Flora turned on his lights, [Appellant] immediately pulled over and was able to hand over his driving documents. There is no blood or breath test to show he was intoxicated. Moreover, there are no roadside tests to show he was intoxicated.

*Id.*

Appellant's argument is unsupported by both the record and prevailing authority. Our Supreme Court has explained:

> The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. **The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony**.

***Commonwealth v. Segida***, 985 A.2d 871, 879 (Pa. 2009) (emphasis added).

The trial court, sitting as the fact finder in this case, reasoned:

> Instantly, [Appellant] was driving a severely damaged vehicle and when initially questioned about the damage, he stated that he ran over a median in Upper Merion and presumably continued to drive the vehicle into a neighboring jurisdiction on two rims. When Officer Flora got behind him, he made a U-turn. When Officer Flora made contact with [Appellant,] he displayed signs of impairment, including glassy, bloodshot eyes, dilated pupils and an odor of alcohol on his breath. He was uncooperative during field sobriety tests. Furthermore, he admitted that he had consumed alcohol and told Officer Flora to arrest him following the Officer's attempt to administer field sobriety tests. The foregoing is sufficient to prove that [Appellant] imbibed a sufficient amount of alcohol as to render him incapable of safe driving.

Trial Court Opinion, 9/16/19, at 4.

The trial court's reasoning is irrefutable. The Commonwealth presented one witness, Officer Evan Flora; Appellant did not present any witnesses. *See* N.T., 4/15/19, at 58. Officer Flora's testimony comports with the trial court's recitation of the evidence reproduced above. For instance, Officer Flora testified that he first observed Appellant's vehicle "on two rims that was sparking from underneath the car" and heard it screeching. *Id.* at 7. When he pulled Appellant over, he observed Appellant, who was alone in the vehicle, to have glassy and bloodshot eyes, "a strong odor of alcoholic beverage emitting from his breath," and, upon standing, an "unsteady gait." *Id.* at 11. Officer Flora testified that Appellant "was attempting to talk his way out of" the portable breath test, and then "began sucking on the device." *Id.* at 15. Although there is more, this testimony without more was sufficient for the trial court to conclude that Appellant drove his vehicle "after imbibing a sufficient amount of alcohol such that [Appellant was] rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(a)(1).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/7/20